# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| FREDRICK S. FOLEY, IV, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-3430-CV-S-NKL-SSA |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social | ) |
| Security Administration | ) |
| | ) |
| Defendant. | ) |

## ORDER

Pending before the Court is Plaintiff Fredrick S. Foley, IV's ("Foley" or "Plaintiff") Amended Motion for Summary Judgment [Doc. # 10]. Foley seeks judicial review of the Commissioner's denial of his requests for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, et seq., and supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, et seq. The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1]  While this appeal has been pending, Foley has been awarded Supplemental Security Income benefits in a subsequently filed suit as of December 1 2006.  Thus, the period at issue in the present appeal runs from Foley's his prior alleged state of onset, April 1, 2004, through November 30, 2006.  Because the

---

[1] Portions of the Parties' briefs are adopted without quotation designated.

1

Court finds that the Administrative Law Judge's decision regarding that period is not supported by substantial evidence in the record as a whole, the Court reverses the ALJ's decision and remands for an award of benefits.

## I.      Background

### A.      Medical Records

Foley alleges he is unable to work due to bipolar disorder type I, personality disorder not otherwise specified, and panic disorder without agoraphobia. (Tr. 203, 227.) He has not engaged in substantial gainful activity since the alleged onset date of April 1, 2004. (Tr. 19.) Foley was 26 years old on the date of his hearing before the ALJ. (Tr. 282.) He was single and had lived in sheltered housing provided by the Missouri Department of Mental Health since June 2005. (Tr. 259.) Foley completed high school and subsequently attended St. Petersburg Junior College, Florida State, and DeVry. (Tr. 115, 149.) He left the latter two institutions due to a manic episode and panic attacks, respectively. (Tr. 149.)

In July 2001, Foley was evaluated for medication services at OMC Behavioral Healthcare. (Tr. 130-132.) He was diagnosed with bipolar disorder, most recent episode depressed, and his GAF was 68. (Tr. 131-132.) Tom Nixon, therapist, noted in March 2002 that Foley had been hospitalized for manic episodes in Autumn 1998 and September 2000. (Tr. 133.) Frederick's GAF was revised to 55-65. *Id.* He was discharged that month prior to moving to Kansas City to attend DeVry Institute. *Id.*

Foley began treatment in Kansas City with M. Azher Mirza, M.D., who noted in February 2003 that he was fairly stable and well focused. (Tr. 189.) By May 2003, he was

unstable due to anxiety and felt overwhelmed by school and his job. (Tr. 191.) Although Foley showed improvement in August 2003, by September he was observed as withdrawn, isolating, more depressed, hopeless, and helpless. (Tr. 192-193.) Dr. Mirza assessed him as unstable and noted vague suicidal thoughts. (Tr. 193.) In October 2003, Mirza noted that Foley's anxiety had improved but was concerned with mania and sleep disturbance. (Tr. 194.) Foley continued to be unstable or partially stable from December 2003 to March 2004. (Tr. 196-199.) His medications were adjusted in three of four appointments. (Tr. 196-198.)

Foley's treatment records were reviewed by State consultant Douglas E. Vaughan, Ph.D., on July 21, 2004. (Tr. 173.) Vaughan's opinion, as reflected in the Psychiatric Review Technique Form, was that Foley suffered from bipolar D/O and was mildly limited in daily activities, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 176, 183.) Vaughan's notes indicate that he reviewed three treatment records from December 30, 2003 to March 16, 2004. (Tr. 185.) He concluded that Foley's allegations were partially credible but did not mention Dr. Mirza's assessment of instability or partial stability. *Id.*

Jan M. Fountain, L.P.C., evaluated the claimant on July 10, 2004, at the request of the State of Missouri for disability determination. (Tr. 154-155.) Fountain found that despite cooperation with treatment and medications, Foley continued to experience depression, expressed by lack of enjoyment in activities, hypersomnia, poor concentration, social withdrawal, and occasional suicidal thought. *Id*. She indicated that Foley's prognosis was guarded. (Tr. 155.)

3

Foley resumed treatment with Tom Nixon in August 2004 after moving back from Kansas City. (Tr. 147.) He reported occasional nightmares, hallucinations, fear of panic attacks caused by leaving home, and suicidal thoughts. (Tr. 149-150.) Foley indicated that he began having panic attacks three to four months prior and had difficulty showing up to work. (Tr. 149, 151.) Nixon assessed Foley's GAF score as 50-60. (Tr. 150.) His medications were adjusted on August 11, 2004 and September 8, 2004 to combat weight gain. (Tr. 152-153.)

In September 2004, Foley's GAF was assessed as 55-59$_2$. (Tr. 156.) His medications were again adjusted in October 2004 to address his inability to sleep. (Tr. 158.) Nixon revised his GAF downward to 41-43 in November 2004, reporting that the claimant wakes up angry and feeling negative for no apparent reason. (Tr. 159.) Foley reported frequent nightmares later in the month, and his dosage of Lamictal was increased to 150 mg. (Tr. 160.) Nixon notes in January 2005 that the Foley has been "teetering on depression for about 2 months" and that he "is not falling asleep for about 3 or 4 hours after taking his Seroquel." (Tr. 163.)

Patricia Carson, R.N., noted in February 2005 that Foley's hygiene had slipped, his mood was sad, and that he believes he will live a very short life. (Tr. 164-165.) Nixon indicated in March that Frederick had regressed somewhat and assessed his GAF as 51-53. (Tr. 166.) On March 10, 2005, Dr. Arifa Salam, M.D., noted that insight was limited and that Foley complained of anxiety, racing thoughts, and depression. (Tr. 167.) Subsequently, he exhibited a constricted affect, increase in depressive symptoms, and

4

admitted to occasionally seeing shadows that move. (Tr. 171-172.)

After moving to Springfield, Foley began therapy at Burrell Behavior Health with Suzanna McKenna, Ph.D. (Tr. 236-239.) On February 22, 2005, Dr. McKenna noted that Foley recognizes panic and anxiety related to social interactions. (Tr. 236.) She indicated in March 2005 that he had signs of avoidant personality disorder. (Tr. 240.) A variety of issues, including poor self esteem and lack of motivation, were addressed in three subsequent therapy sessions. (Tr. 241-243.) In May 2005, Foley again reported regular visual hallucinations. (Tr. 244.)

Over the next seven bimonthly therapy sessions, Dr. McKenna discussed topics such as signs and symptoms of mania, managing stress, communicating with family members, and developing social skills. (Tr. 245-251.) Later discussions covered emotional development, motivation, his new relationship with another person diagnosed with bipolar disorder, and avoidance tendencies. (Tr. 252-258.) After his hearing before the ALJ, Foley addressed issues such as stress preparing for his disability hearing, anxiety, fear of commitment, and anger and depression in response to breaking up with his girlfriend. (Tr. 262-269, 271, 272, 274, 275.)

On August 1, 2006, Dr. McKenna addressed the ALJ's unfavorable decision in therapy notes. She wrote that Foley is a higher-functioning client who is maintained effectively for day-to-day activities through medications. (Tr. 277.) "However," she wrote, "he has trouble with panic, depression, and the possibility of mania when he is stressed with work or school". *Id.* Significantly, she noted that his stability has gotten in the way of

5

his disability application. *Id.*

Starting in June 2005, Dr. Edgar L. Galinanes, M.D., assumed the role of Foley's treating psychiatrist. He diagnosed bipolar disorder type I and personality disorder not otherwise specified in their first visit. (Tr. 203.) Dr. Galinanes reported increasing anxiety and difficulty sleeping in July and revised his medications. (Tr. 204.) On August 10, 2005, Foley indicated that his sleeping had improved but that his anxiety was still present. (Tr. 206.) On August 30th, Dr. Galinanes completed an annual report in which he assessed Foley's GAF as 58. (Tr. 211.) He noted that Foley's symptoms have caused clinically significant impairment in social and interpersonal functioning as evidenced by his inability keep a job and finish school. (Tr. 212.) Subsequent monthly appointments noted no major changes, excepted for reported sleeping difficulties in November 2005, anxiety in February 2006, and depression in July 2006. (Tr. 231-235, 262A, 265, 270, 273, 276.)

Dr. Galinanes completed a Medical Source Statement-Mental ("MSS-M") on Foley's behalf. (Tr. 127-128.) He noted on September 23, 2005, that Foley was markedly limited in the following areas: 6) maintain attention and concentration for extended periods; 7) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; 11) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; 17) respond appropriately to changes in the work setting, and 20) set realistic goals or make plans independently of others. *Id.* Dr. Galinanes indicated that Foley was moderately limited in 9 areas as well. *Id*. His

6

professional opinion was that Foley lacked the capacity to make simple work-related decisions, respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting. (Tr. 128.)

### B. The Administrative Hearing

Administrative Law Judge Mark A. Brown conducted Foley's hearing on January 25, 2006. (Tr. 278.) Darrell Taylor, Ph.D., testified as a vocational expert ("VE"). *Id.* In the first hypothetical question, the ALJ asked the VE to consider a hypothetical worker with an unlimited functional capacity but was restricted to low stress, simple repetitive task positions with no public interaction or teamwork jobs. (Tr. 312.) The VE testified that the claimant would be able to work as a unskilled janitor or hand packer. (Tr. 313.) The VE was then asked at what point GAF scores fall so low that the performance of these types of jobs would be precluded. *Id.* The VE testified that GAF scores of 50 or below would preclude employment but that the scores are very subjective and can vary from evaluator to evaluator. *Id.* The second hypothetical question asked Taylor to consider a worker with the limitations contained in Dr. Galinanes' MSS-M. *Id.* He testified that the worker would be unable to maintain employment. (Tr. 314.)

### II. Discussion

Treating doctors' opinions should not ordinarily be disregarded and are normally entitled to great weight. *See Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2000); *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). Moreover, the opinions of doctors who have treated a claimant regularly over a period of months or years should be given

7

more weight because they have a longitudinal picture of their impairments. *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003) (citing 20 C.F.R. § 404.1527(d)). Discounting or disregarding the opinion of a treating physician is appropriate only where other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions. *Prosch*, 201 F.3d at 1013. In this case, the ALJ improperly discarded the opinions of Foley's treating psychiatrist and psychologist.

Foley's treating psychiatrist, Dr. Edgar L. Galinanes, strongly supported his disability claim. Foley saw Dr. Galinanes monthly at Burrell Behavioral Health for psychiatric services and medication management. (Tr. 210.) In total, Dr. Galinanes treated Frederick 15 times from June 2005 to July 2006. (Tr. 203-215, 232-235, 262A, 265, 270, 273, 276.) In his August 2005 annual assessment, Dr. Galinanes found that Foley was markedly limited in 5 areas of occupational functioning and moderately limited in 9 other areas. (Tr. 127-128.) His professional opinion was that Foley lacked the capacity to make simple work-related decisions, respond appropriately to supervision, co-workers, and usual work situations, and to deal with changes in a routine work setting. (Tr. 128.)

Foley's disability claim is also supported by his treating psychologist, Suzanne McKenna. Dr. McKenna indicated after the ALJ's decision that Foley is a higher-functioning client who has maintained effectively for day-to-day activities through medications. (Tr. 277.) "However," she noted, "he has trouble with panic, depression, and the possibility of mania when he is stressed with work or school." *Id.* She noted that his

stability had gotten in the way of his disability application and that the disability office did not seem to understand the nature of Foley's illnesses. *Id.*

No other medical assessments are supported by better or more thorough medical evidence. The only other psychological assessment in the record is that of the State psychological consultant, Douglas Vaughan. Vaughn did not examine Foley and merely reviewed medical records. (Tr. 185.) The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence. *See Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998). Even the extent of his medical record review is questionable. The opinion only mentions records from three dates, 12/30/03, 2/3/04, and 3/16/04, and inexplicably ignores Dr. Mirza's opinion that Foley was either unstable or partial stable. (Tr. 185, 196- 199.)

Vaughn's opinion does not constitute substantial evidence. Foley's hearing was held in January 2006, while Vaughn issued his opinion in July 2004. (Tr. 174, 280.) Agency opinions which are not based on the full case record cannot constitute substantial evidence. *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995). In *Frankl*, the court objected to use of an agency opinion issued 11 months before the claimant's hearing. *Id.* After Vaughn's report, Foley received significant psychiatric treatment. He was treated 10 times by Dr. Galinanes, 19 times by McKenna, 6 times by Tom Nixon, L.C.S.W., and 11 times by Patricia Carson, R.N., between August 2004 and January 2006. (Tr. 236-258.) The rationale of the *Frankl* court is certainly stronger in this case due to the greater delay between the report and the hearing.

9

The ALJ also failed to explain the weight given to Vaughn's opinion. ALJs must explain the weight given to opinions of State medical consultants in the decision unless a treating source's opinion is given controlling weight. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). These opinions may not be ignored. SSR 96-6p. In this case, the ALJ opted not to grant Dr. Galinanes' opinion controlling weight but failed to weigh or even acknowledge the existence of Vaughn's opinion in discounting Galinane's opinion. (Tr. 13-20.) Dr. Galinanes' credibility was not undermined by inconsistent medical opinions. Medical opinions are statements that reflect judgments about the nature and severity of impairments. *Anderson v. Barnhart*, 312 F.Supp.2d 1187 (E.D.Mo. 2004). The record contains only two such medical opinions from Dr. Galinanes, the August 30, 2005 Annual Assessment and the September 23, 2005 MSS-M. In the Annual Assessment, Dr. Galinanes assessed Foley's GAF as 58, exhibiting moderate symptoms or moderate difficulty with social and occupational functioning. (Tr. 211, DSM-IV-TR.) He noted that Foley's symptoms have caused clinically significant impairment in social and interpersonal functioning as evidenced by his inability keep a job and finish school. (Tr. 227.) This opinion was consistent with that of the subsequent MSS-M, in which he found Foley moderately limited in a plurality of occupational functioning areas. (Tr. 127-128.)

Dr. Galinanes' opinion is also supported by his treatment notes. In June 2005, he diagnosed Foley with bipolar disorder type I, and his symptoms included daily depressed mood, markedly diminished interest in daily activities, psychomotor agitation or retardation, daily fatigue, feelings of worthlessness, and diminished concentration. (Tr. 203, 212.) In

10

July 2005, Dr. Galinanes noted that the claimant was experiencing increasing anxiety and some difficulties sleeping. (Tr. 204.) To combat increased anxiety, he increased Foley's Klonopin to 1 mg in August 2005. (Tr. 206.) In August 2005, Dr. Galinanes diagnosed Foley with panic disorder without agoraphobia. (Tr. 227.) His symptoms included fear of crowds, feelings of fear and work difficulties, chest pains, and breathlessness. *Id.* Ambien 10 mg was prescribed in November 2005 to address the claimant's inability to sleep well at night. (Tr. 233.)

In the decision, the ALJ infers that because Foley's mental status was "quite stable", his ability to get along with other people and handle work stress was not significantly impaired. (Tr. 17.) This is an improper inference for an ALJ to make. Administrative law judges may not draw upon their own inferences from medical reports. *See Shontos*, 328 F.3d at 427. A claimant's residual functional capacity is a medical question. *See Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Dr. McKenna, Foley's treating psychologist, directly addresses this incorrect inference. She states that the claimant's hard work to be as stable as possible by complying with treatment has "gotten in the way" of his disability application. (Tr. 277.) When faced with stress from work or school, he experiences panic, depression, and the possibility of mania. *Id.* Even while living in a structured, low stress environment, Foley experienced three panic attacks. (Tr. 292.) "It is well settled law that it is error for an ALJ to substitute his judgment for that of the physicians." *Miller v. Callahan*, 971 F.Supp.393 (S.D.Iowa 1997). Additionally, the ALJ significantly overstated the importance of Foley's GAF scores. The ALJ elicited testimony from the VE that GAF scores of 50 or

11

below would precede employment.  (Tr. 313.)  The ALJ neglects to cite the VE's next sentence, that GAF scores are very subjective and can vary from evaluator to evaluator.  *Id.*  Moreover, Dr. Galinanes' expressed the same opinion in the MSS-M that was expressed in Foley's GAF scores.  He found that Foley was not significantly limited in 6 areas and was markedly limited in 5 categories.  (Tr. 127-128.)  The remaining limitations were in the moderate category.  *Id.*  This is entirely consistent with Foley's GAF of 58, which the ALJ identifies as showing moderate to borderline mild difficulty with social and occupational functioning.  (Tr. 16.)  As the VE and the publishers of the DSM-IV have suggested, the scores are very subjective and easily misinterpreted.  GAF measures a clinician's judgment of an individual's overall level of functioning.  *See McPherson v. Barnhart*, 356 F.Supp.2d 953, 962 (S.D. Iowa 2005).  Dr. Galinanes' MSS-M, in contrast, specifically assessed Foley's occupational functioning only as courts in this circuit have determined that GAF scores are potentially helpful but not essential to the accuracy of an RFC.  *See Brewster v. Barnhart*, 366 F.Supp.2d 858, 876 (E.D.Mo. 2005).  Additionally, GAF scores are only weakly correlated with occupational functioning.  This analysis is supported by the Social Security Administration, which states that GAF "does not have a direct correlation to the severity requirements in [SSA's] mental disorder listings".  SSA 65 Fed. Reg. 50,764 – 50,765.

The ALJ's criticism of the form of Dr. Galinanes' opinion should similarly be rejected.  The ALJ noted that the opinion was a "pre-printed check-off form", not a narrative report.  (Tr. 17.)  This ignores that Dr. Galinanes issued a detailed seven page narrative report approximately three weeks before completing the MSS-M.  (Tr. 224-230.)  In that report, Dr.

12

Galinanes indicated that Foley's symptoms have caused clinically significant impairment in his social and interpersonal function, as evidenced by his inability to maintain employment or finish school. (Tr. 227.) As to the ALJ's objection on the form of the opinion, these checklist evaluations are considered sources of objective medical evidence. *See Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005). Moreover, if an ALJ is dissatisfied with the form in which an opinion is presented, they have the duty to develop the record fully and fairly in order to make an informed decision regarding Plaintiff's mental health. *See Burtalo v. Shalala*, 1995 WL 324695 (S.D. Iowa 1995).

Additionally, ALJs must weigh medical source opinions which are not given controlling weight using a variety of factors. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). These include: 1) whether the source examined the claimant; 2) nature and length of treatment relationship; 3) supportability and consistency of the opinion; 4) specialization of the physician; and 5) familiarity with the case record and disability requirements. *Id*. This burden was recently reiterated in SSR 06-3p, which instructed that Sections 404.1527 and 416.927 "provide general guidance for evaluating all relevant evidence in a case record and provide detailed rules for evaluating medical opinions from acceptable medical sources". The Eighth Circuit has interpreted these regulations as requiring that an ALJ "always give good reasons for the particular weight given to a treating physician's evaluation." *Prosch*, 201 F.3d at 1013. In this case, the ALJ references Dr. Galinanes' opinion but impermissibly fails to weigh that opinion or provide good reasons for its rejection.

Psychiatrists and psychologists are the experts on mental health, not lawyers or

13

judges. *See McPherson v. Barnhart*, 356 F.Supp.2d 953, 962 (S.D.Iowa 2005). The ALJ inexplicably rejected Dr. Galinanes' diagnosis of panic disorder and failed to include the disorder in the third finding. (Tr. 19, 203, 212.) Moreover, Eighth Circuit law prohibits an ALJ from substituting their opinion for that of the physicians. *See Ness v. Sullivan*, 904 F.3d 432, 435 (8th Cir 1990). The ALJ impermissibly substituted his judgment for that of Dr. Galinanes, and the Appeals Council erred in substituting their opinion for that of Dr. McKenna. Their well-supported opinions were that Foley's bipolar and panic disorders precluded employability. The VE confirmed that a worker with these limitations would be unable to maintain employment. (Tr. 314.)

### III. Conclusion

Upon review of the record as a whole, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is hereby

ORDERED that Foley's Amended Motion for Summary Judgment [Doc. # 10] is GRANTED. The decision of the ALJ is REVERSED and REMANDED with instructions to award benefits.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: July 16, 2007
Jefferson City, Missouri

14